UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-00237-BR

| | |
|---|---|
| BEN ARTIS, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    ORDER |
| | ) |
| MURPHY-BROWN, LLC, d/b/a | ) |
| SMITHFIELD HOG PRODUCTION | ) |
| DIVISION, | ) |
| | ) |
|     Defendant. | ) |

This matter is before the court on the parties' post-trial motions following the entry of final judgment on the jury verdict awarding the six trial plaintiffs in this case compensatory and punitive damages on their nuisance claims. (DE ## 275, 277, 281, 285.)

## I. DEFENDANT'S MOTION TO ALTER OR AMEND

Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, defendant requests that the court vacate the judgment. "A Rule 59(e) motion may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.' It is an extraordinary remedy that should be applied sparingly." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (citations omitted). Because defendant filed its motion within 28 days of entry of the judgment, the court considers it only under this standard, rather than under the Rule 60(b) standard. See Robinson v. Wix Filtration Corp., 599 F.3d 403, 412 (4th Cir. 2010) ("We have squarely held, however, that a motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no

later than [28] days after entry of the adverse judgment and seeks to correct that judgment." (citations omitted)).

Defendant argues that the judgment should be vacated for the failure to join Greenwood Livestock LLC ("Greenwood Livestock") and the Pagle Corporation ("Pagle"), owners of the subject farms, as necessary and indispensable parties. Defendant filed a similar motion in the related case of McKiver v. Murphy-Brown, LLC, No. 7:14-CV-180-BR, and for the reasons stated in the court's 17 December 2018 order in that case, (DE # 346, at 5-7), the motion will be denied.

## II. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Based on Rule 50(b) of the Federal Rules of Civil Procedure, defendant renews its earlier motions for judgment as a matter of law. In considering a Rule 50(b) motion, "the question is whether a jury, viewing the evidence in the light most favorable to [the non-movant], could have properly reached the conclusion reached by th[e] jury. If reasonable minds could differ about the result in this case, [the court] must affirm the jury's verdict." Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (citation and internal quotation marks omitted).

Defendant argues that it is entitled to judgment as a matter of law because (1) plaintiffs failed to present sufficient evidence to support punitive damages; (2) plaintiffs presented no evidence to support compensatory damages as limited by an amendment to North Carolina's Right to Farm Act ("RFA"); (3) plaintiffs' claims are barred by an amendment to the RFA; and (4) Greenwood Livestock and Pagle are indispensable parties.

As for the first ground, defendant contends it is entitled to judgment as a matter of law because plaintiffs failed to present sufficient evidence to support punitive damages. Considering the evidence developed at trial in the light most favorable to plaintiffs, a reasonable jury could

2

have found defendant liable for punitive damages. As for the second and third ground, because plaintiffs brought this action prior to the effective dates of the subject amendments to the RFA, see McKiver (DE # 346) at 2-5; McGowan v. Murphy-Brown, LLC, No. 7:14-CV-182-BR (DE # 472) at 2-5, those amendments do not limit the compensatory damages plaintiffs may recover or bar their claims. As for the fourth ground, defendant relies on its motion to alter or amend the judgment. As addressed above, for the reasons stated in McKiver (DE # 346), the court concludes Greenwood Livestock and Pagle are not indispensable parties.

The court will deny defendant's motion for judgment as a matter of law.

### III. DEFENDANT'S MOTION FOR A NEW TRIAL

Defendant moves for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. "In considering a motion for a new trial, a trial judge may weigh the evidence and consider the credibility of witnesses, and if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010) (citation and internal quotation marks omitted).

Defendant asks the court to revisit a number of its prior rulings, covering pretrial cross-motions for summary judgment through jury instructions. The court declines to disturb these rulings. The only issues defendant raises that merit further discussion are its allegations of misrepresentations by plaintiffs' counsel regarding the measure of damages and its request for remittitur.

    A.    **Alleged Misrepresentations by Plaintiffs' Counsel**

Defendant moves for a new trial based on certain statements made by plaintiffs' counsel during his opening statement and closing argument.

3

> In the interests of justice and efficiency, a new trial should not be lightly granted. To begin with, a new trial should be granted only if prejudicial statements are so egregious that they prevent the complaining party from receiving a fair trial. *See DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 519 (4th Cir. 1985). If a party fails to object to an error at trial, a new trial will not be granted unless "exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." *Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992) (internal quotation marks omitted). Finally, a curative instruction may render prejudicial remarks harmless. *See City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 983-84 (4th Cir. 1987).

Just Wood Indus., Inc. v. Centex Const. Co., No. 98-1855, 1999 WL 606859, at *7 (4th Cir. Aug. 12, 1999) (unpublished table decision).

First, defendant contends plaintiffs' counsel misstated the law in his opening statement and closing argument by suggesting that the jury should award compensatory damages based on the costs to prevent the harm, that being the amount to install and run an alternative waste management system known as "Super Soils." (Def.'s Mem. Supp., DE # 284, at 2-3.) Defendant contends such argument is not in accordance with North Carolina law, which provides that "compensatory damages are measured by the amount of money necessary 'to restore the plaintiff to his original condition or to make the plaintiff whole.'" (Id. at 3 (quoting Watson v. Dixon, 532 S.E.2d 175, 177-78 (N.C. 2000)).) While defendant's statement of law is accurate, it fails to acknowledge that North Carolina law also recognizes that a purpose of compensatory damages is to deter conduct that causes harm. See Haarhuis v. Cheek, 805 S.E.2d 720, 728 (N.C. Ct. App. 2017), writ denied, review denied, appeal dismissed, 814 S.E.2d 103 (N.C. 2018). As such, counsel may make a general deterrence argument in reference to compensatory damages, provided counsel does not refer to those aggravating factors necessary for an award of punitive damages "or urge the trier of fact to punish the defendant." Id. Plaintiffs' counsel's argument did not exceed this standard. However, even if it did, the court finds that the statement was not egregious enough to have prevented defendant from receiving a fair trial.

Second, defendant argues plaintiffs' counsel failed to heed the court's instructions not to discuss "'salaries, net worth, [or the] financial condition of the defendant'" when referencing compensatory damages. (Def.'s Mem. Supp., DE # 284, at 3 (quoting 8/2/18 Tr., DE # 252, at 3).) Before closing arguments, the court instructed plaintiffs' counsel to address punitive damages "last" in his argument, not to discuss defendant's financial numbers before his punitive damages argument, and that he must fully open. (8/2/18 Tr., DE # 252, at 3-4, 9-10.) Defendant contends plaintiffs' counsel violated these instructions in his rebuttal by arguing the jury should award as compensatory damages "'what it takes to prevent the harm,'" which "'Smithfield can afford [to fix] and you know that because of the revenue numbers.'" (Id. (quoting 8/2/18 Tr., DE # 252, at 128-29).) Notably, defendant did not contemporaneously object to this portion of argument, but at any rate, the court concludes plaintiffs' counsel did not violate the court's instructions.

Third, defendant argues plaintiffs' counsel made an inappropriate argument regarding punitive damages. Defendant contends that, in his rebuttal argument, plaintiffs' counsel conflated a concept related to compensatory damages with a concept related to punitive damages, when he "told the jury that it must 'consider the interest of the community' in assessing 'the degree of the defendant's awareness of the probable consequences of its conduct.'" (Def.'s Mem. Supp., DE # 284, at 4 (quoting 8/2/18 Tr., DE # 252, at 115).) Defendant did not contemporaneously object to this argument. Reviewing plaintiffs' counsel's rebuttal as a whole, he does not conflate these concepts, rather, he concludes his thoughts about the interest of the community relative to compensatory damages and then moves to argument regarding evidence relevant to punitive damages. (See 8/2/18 Tr., DE # 252, at 115-17.) As such, plaintiffs' counsel's argument was not improper.

5

Alternatively, defendant requests a new trial based on the court's failure to provide defendant's requested limiting instruction to correct plaintiffs' counsels' purported misstatements. Having concluded that the statements and arguments to which defendant refers were not improper, there was no reason for the court to give the jury the requested limiting instruction. Furthermore, the court instructed the jury regarding what it should consider during deliberations:

> As stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted in the record.
> Remember that any statements, objections, or arguments made by the lawyers are not evidence in this case.

(8/2/18 Tr., DE # 252, at 133.) The court also instructed the jurors that it was their duty to follow the law. (Id. at 131.) The court's instructions cured any potential prejudice resulting from plaintiffs' counsel's statements. A new trial is not warranted.

### B.     Defendant's Request for Remittitur

Absent a new trial, defendant moves this court to remit the jury verdict on the ground that the damages awarded were excessive. The jury awarded each of the six trial plaintiffs compensatory damages ranging from $3 million to $5 million and punitive damages of $75 million. Pursuant to North Carolina's cap on punitive damages, N.C. Gen. Stat. § 1D-25(b), the court reduced the jury's punitive damages awards, resulting in such awards ranging from $9 million to $15 million per plaintiff.

#### 1.     Compensatory Damages

The court applies North Carolina law to determine whether the compensatory damages awards should be remitted for excessiveness. See Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 280 (4th Cir. 1999) ("[A] district court sitting in diversity must apply state law standards

6

when it considers a Rule 59(a) motion for a new trial based upon the alleged excessiveness of the jury's compensatory damage award." (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 438-39 (1996))).

> While classic remittitur is not permitted in North Carolina, the concept is governed by Rule 59 of the North Carolina Rules of Civil Procedure in which a new trial may be granted to a party for excessive . . . damages appearing to have been awarded under the influence of passion or prejudice.

Rhyne v. K-Mart Corp., 562 S.E.2d 82, 89 (N.C. Ct. App. 2002) (citing N.C. Gen. Stat. § 1A-1, Rule 59(a)(6) (1999)), aff'd, 594 S.E.2d 1 (N.C. 2004).

Defendant contends that the compensatory damages awards are excessive because the plaintiffs' loss of the use and enjoyment of their properties should be measured by the values of their properties, which purportedly range from "$12,000 to $71,000." (Def.'s Mem. Supp., DE # 284, at 30 (citing N.C. Gen. Stat. § 106-702(a)(2) (2017) (limiting compensatory damages for a temporary nuisance emanating from an agricultural operation to diminution of fair rental value of the plaintiff's property)).) Plaintiffs' compensatory damages are not so limited. See McGowan (DE # 472) at 5 (holding that the effective date of N.C. Gen. Stat. § 106-702(a)—11 May 2017—controls the statute's application).

Furthermore, the court has considered the consequences of adopting such an approach. It would, in essence, grant a private actor the right to take the property of a private citizen, akin to the power of eminent domain. Cf. N.C. State Hwy Comm'n v. Farm Equip. Co. Inc., 189 S.E.2d 272, 278 (N.C. 1972) ("'Private property can be taken by the exercise of the power of eminent domain *only* where the taking is for a public use.'" (emphasis added) (citation omitted)); Carlos A. Ball, The Curious Intersection of Nuisance and Takings Law, 86 B.U. L. Rev. 819, 857-58 n.220 (2006) ("There are also important remedial differences between a takings claim and a nuisance action. The plaintiff in a takings case is only entitled to compensation for the loss in

7

the property's fair market value. A plaintiff in a nuisance case, on the other hand, may be entitled to an injunction. If an injunction is not requested, or if one is not deemed appropriate, a plaintiff in a nuisance action may nonetheless be entitled to not only damages that reflect the loss in fair market value, but also to damages that address additional harms such as the effects on the plaintiff's health caused by the defendant's conduct." (citations omitted)). The purpose of eminent domain is to compensate the individual for the economic value of the property right taken, see Richardson, 817 S.E.2d at 887-88, while the purpose of nuisance law, is to compensate the individual for the *lost use and enjoyment* of his or her property, see Hanna v. Brady, 327 S.E.2d 22, 25 (N.C. Ct. App. 1985). These distinct purposes warrant distinct valuation. See Brown v. Legal Found. of Wash., 538 U.S. 216, 236-37 (2003) ("[G]iven 'the liability of all property to condemnation for the common good,' an owner's nonpecuniary losses attributable to 'his unique need for property or idiosyncratic attachment to it, like loss due to an exercise of the police power, is properly treated as part of the burden of common citizenship.'" (quoting Kimball Laundry Co. v. United States, 338 U.S. 1, 5 (1949)).

Accordingly, the plaintiffs in this nuisance action properly pled compensatory damages to redress their discomfort and annoyance. In re NC Swine Farm Nuisance Litig., No. 5:15-CV-0013-BR, 2017 WL 5178038, at *10 (E.D.N.C. Nov. 8, 2017). This harm is not capable of precise calculation. See Hanna, 327 S.E.2d at 25 (recognizing in a nuisance action, "[t]he type of injuries suffered by the plaintiff—physical pain, annoyance, stress, deprivation of the use and comforts of one's home—are intrinsically not susceptible of exact pecuniary calculation" (internal quotation marks and citations omitted)). The court instructed the jury as much:

> The plaintiff[s] claim that the interference with the use and enjoyment of his or her property has caused him or her anger, embarrassment, annoyance, inconvenience, decreased quality of life, and/or physical and mental discomfort. There is no fixed formula for placing a

value on these alleged harms. You will determine what is fair compensation by
applying logic and common sense to the evidence.

(8/2/18 Tr., DE # 252, at 141.) What the jury determines those damages to be is a particular and peculiar function of the jury. Hanna, 327 S.E.2d at 25 ("The determination of such damages is left to the sound judgment and discretion of the trier of fact.").

Defendant also claims the compensatory damages awards are excessive when compared to the amounts awarded in (1) related cases where plaintiffs' counsel did not make purportedly improper argument regarding the measure of damages and (2) other North Carolina nuisance cases. The awards here are higher than awards in the trials of McKiver ($75,000 per trial plaintiff) and McGowan ($65,000 per trial plaintiff). However, those cases involve different plaintiffs, hog farms, and facts from those at issue here, and as discussed previously, plaintiffs' counsel's arguments at this trial were not improper. As for the other North Carolina nuisance cases to which defendant cites, the court has considered them but concludes they alone do not justify remittitur.

Considering the record as a whole, including the difference in the trial plaintiffs' awards demonstrating that the jury considered the parties individually, there is no indication that the jury's decision was made under the influence of passion or prejudice. As such, the court will not remit the jury's compensatory damages awards in this case.

### 2. Punitive Damages

Defendant contends the court should remit the punitive damages awards because they too are excessive. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003). The Supreme Court has identified "guideposts" this court must consider in an analysis of such a challenge: "(1) the degree of reprehensibility of the

defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 418 (citation omitted). The first guidepost is the most important, id. at 419, and is the only one upon which defendant relies.

> "[T]o determine the reprehensibility of a defendant," the court consider[s] whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Id. (citation omitted).

Here, plaintiffs testified that defendant's conduct affected their physical and mental well-being. In addition to the type of harm suffered, the jury was required to consider the existence of malice or willful or wanton conduct determining whether to award punitive damages in the first instance. (See 8/2/18 Tr., DE # 252, at 143.) Under North Carolina law, and as the court instructed the jury,

> [m]alice means a sense of personal ill will toward the plaintiff that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the plaintiff.
> Willful or wanton conduct means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm.

(Id.) Consequently, the jury found that defendant's conduct evinced an indifference to and reckless disregard of the safety of others and/or the trial plaintiffs' harm resulted from intentional malice. Furthermore, the nuisance was not an isolated event but occurred with frequency over the seven-year damages period. These factors collectively indicate defendant's misconduct was sufficiently reprehensible to support the punitive damages awarded.

Defendant cites to three reasons as to why its conduct was not reprehensible. First, it relies on the lawfulness of hog operations. It is true that the subject hog farm operates lawfully under its State permit. However, plaintiffs presented evidence that defendant's predecessor company vigorously opposed the efforts of local boards of health, county commissioners, and state legislators to hold the hog industry to any regulatory standard beyond what is required by the State permit. The company was successful in its efforts until 20 years ago when a moratorium went into effect banning new or expanded industrial hog operations from using the open lagoon and spray field waste management systems. That moratorium remains today. The fact that the subject hog farm complies with its permit, even with defendant's assistance, carries little weight.

Second, defendant suggests its conduct is less reprehensible because plaintiffs did not complain prior to filing suit. The majority of the trial plaintiffs acknowledged they had not complained before the lawsuit about the conditions they were experiencing. Even so, prior to the filing of this action, defendant was well aware of reports of offensive odors associated with industrial hog operations in eastern North Carolina and of the effects of those operations on the people in the surrounding communities. Also, it has long been aware that persons in those communities have complained about hog odors and associated truck traffic interfering with their daily activities and quality of life. Furthermore, prior to this action, it became aware that counties in North Carolina were concerned about the impact of industrial hog operations on the health and welfare of their citizenry including impacts due to odor, traffic, and noise. More important, however, is the fact that with the filing of this action—four years prior to trial— defendant learned of these plaintiffs' complaints, yet it did nothing to lessen the effects of the nuisance, making defendant's conduct more reprehensible.

Finally, defendant cites its lack of profit during the relevant time period. Defendant's profit margin does not minimize the reprehensibility of its conduct. Defendant is part of a vertically integrated business. Under this structure, defendant sells its hogs to its parent company. The parent company then processes and sells the resulting products for profit. Because of this business structure, if defendant wanted to purchase lagoon covers (which could reduce odor from the hog operation), it would be funded by its parent or grandparent company. Defendant, however, has chosen not to implement this technology. Instead, it has attempted to shift that responsibility onto the owner of the farm, even though it effectively controls every aspect of the operation, including the supply of hogs, their feed, their transportation, and the operating procedures, and provides frequent technical assistance. In nearly every aspect, defendant dictates the activities at the farm.

Additionally, although not argued by defendant, the court considers the second State Farm guidepost—the disparity between actual and punitive damages. The Supreme Court refuses to adopt a bright-line ratio in this regard, State Farm, 538 U.S. at 425; however, the Court has recognized that "[s]ingle-digit multipliers are more likely to comport with due process," id. The ratio here is 3:1. See N.C. Gen. Stat. § 1D-25(b) ("Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), *whichever is greater*." (emphasis added)).

For these reasons, the court concludes the punitive damages awards do not offend due process. Accordingly, they will not be remitted.

## IV. PLAINTIFFS' MOTION TO AMEND

Plaintiffs move to amend the judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure. (See DE # 281, at 2.) Under Rule 60(b)(6), "[o]n motion and just terms, the court

may relieve a party or its legal representative from a final judgment, order, or proceeding for. . . any other reason that justifies relief." To grant relief under this provision of Rule 60, the circumstances must be "extraordinary." Aikens v. Ingram, 652 F.3d 496, 500 (4th Cir. 2011). "The decision to grant or deny a Rule 60(b)(6) motion, as with all Rule 60 motions, is committed to a district court's sound discretion." Brunson v. Colvin, No. 5:11-CV-591-FL, 2013 WL 3761305, at *1 (E.D.N.C. July 16, 2013) (citations omitted).

Specifically, plaintiffs request that the court set aside its reduction of the jury's punitive damages awards on the ground that North Carolina's statutory punitive damages cap is unconstitutional as applied. The court has previously considered plaintiffs' arguments and does not find that extraordinary circumstances exist to grant relief under Rule 60(b)(6). Accordingly, the court stands by its earlier decision reducing the punitive damages awards in this case. (DE # 265.)

## V. CONCLUSION

For the foregoing reasons, defendant's motions to alter or amend the judgment (DE # 275), for judgment as a matter of law (DE # 277), and for a new trial (DE # 285) are DENIED. Plaintiffs' motion to amend the judgment (DE # 281) is DENIED. Additionally, defendant's 3 August 2018 oral motion to set aside the verdict is DENIED.

This 8 March 2019.

_____
                  W. Earl Britt
                  Senior U.S. District Judge